UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANDRE CANTEY,

          Plaintiff,

 -against-            9:17-CV-284 (LEK/CFH)

DANIEL F. MARTUSCELLO, *et al.*,

          Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

Pro se plaintiff Andre Cantey, a member of the Nation of Islam ("NOI"), brought this action under 42 U.S.C. § 1983 against several employees of the Coxsackie Correctional Facility ("Coxsackie C. F."): Superintendent Daniel Martuscello, Chaplain Grover Reddie, and Deputy Superintendent of Programs David Barringer (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). Plaintiff's claims arise out of Defendants' purported denial of Plaintiff's First Amendment rights to participate in Jumu'ah services between June 2015 to January 2016, Savior's Day services on October 7, 2015, and other religious exercises. Id.[1] Reddie has moved this Court to reconsider parts of its March 28, 2019 Memorandum-Decision and Order, Dkt. No. 54 ("2019 Memorandum-Decision and Order"), under Federal Rule of Civil Procedure 54(b). Dkt. Nos. 55 ("Motion for Reconsideration"); 55-1 ("Reddie's Memorandum").

For the reasons that follow, Reddie's Motion for Reconsideration is granted in part and denied in part.

---

[1] For a complete description of these religious exercises, see the March 28, 2019 Memorandum-Decision and Order of this Court. Dkt. No. 54 ("2019 Memorandum-Decision and Order").

## II. BACKGROUND

### A. Factual Background

In addition to being detailed in the 2019 Memorandum-Decision and Order, the facts and allegations in this case were detailed in a Decision and Order issued by this Court on May 11, 2017, Dkt. No. 5 ("2017 Decision and Order"), and a Report-Recommendation issued by the Honorable Christian F. Hummel, United States Magistrate Judge, on October 10, 2018, Dkt. No. 39 ("2018 Report-Recommendation"), familiarity with which is assumed. The Court briefly summarizes the relevant facts and allegations as follows.

Plaintiff asserts that Reddie ignored requests Plaintiff and other NOI inmates made in June 2015 to participate in Jumu'ah services. Compl. ¶ 2;[2] see also Dkt. No. 42 ("Plaintiff's Objection to 2018 Report-Recommendation") at 13 ("June 23, 2015 Letter"), 25–30 ("Hill Letter"), 31–32 ("McCoy Letter"). Plaintiff also alleges that Reddie canceled October 7, 2015 Savior's Day services even though they were scheduled on the 2015 Coxsackie C. F. Special Events Calendar. Compl. ¶ 4.

### B. Procedural History

Invoking the doctrine of qualified immunity, Defendants moved for summary judgment on Plaintiff's claims against (1) Reddie for preventing Plaintiff from participating in Jumu'ah services between June 2015 and January 2016, Savior's Day services on October 7, 2015, and other religious exercises in violation of the Free Exercise Clause of the First Amendment; and (2)

---

[2] "A verified complaint," like the Complaint in this case, "is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist . . . ." See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Fed. R. Civ. P. 56(e)).

Martuscello and Barringer for religious discrimination under the Equal Protection Clause of the Fourteenth Amendment. Dkt. Nos. 33 ("Motion for Summary Judgment"); 33-1 ("Moore Declaration"); 33-6 ("Defendants' Statement of Facts"); 33-7 ("Defendants' Summary Judgment Memorandum"). Judge Hummel issued his Report-Recommendation concluding that the Motion for Summary Judgment should be granted. R. & R. After considering Plaintiff's Objections to the Report-Recommendation, Dkt. No. 42 ("Objections"), the Court dismissed Plaintiff's claims against Martuscello and Barringer, but allowed the free exercise claims against Reddie to proceed regarding Plaintiff's inability to participate in Jumu'ah and Savior's Day services. Dkt. No. 54 ("2019 Memorandum-Decision and Order") at 7–27, 30–32. In that opinion, the Court also construed the Complaint to assert a claim against Reddie under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, for the same conduct underlying Plaintiff's free exercise claim. Id. at 32–33. The Court provided Reddie with fourteen days to object the Court's construal of the Complaint to include a RLUIPA claim. Id. at 33.

Reddie has moved the court to reconsider three aspects of the 2019 Memorandum-Decision and Order: (1) Reddie was personally involved in failing to provide Plaintiff Jumu'ah services between June 2015 to January 2016; (2) a reasonable person in Reddie's position would have known that missing those services imposed a substantial burden on Plaintiff's free exercise rights; and (3) Reddie did not have a legitimate penological interest in canceling the October 7, 2015 Savior's Day services. Reddie's Mem. at 3–12. He also objects to the Court's construal of the Complaint to include a RLUIPA claim. Id. at 12–13.

3

III.    LEGAL STANDARD

   A. Rule 54(b)

Rule 54(b) provides in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

As another court in this district has observed:

> Motions under Rule 54(b) are subject to the law-of-the-case doctrine. In re Rezulin Liability Litigation, 224 F.R.D. 346, 349 (S.D.N.Y. 2004). This means that the decisions referenced in Rule 54(b) "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). This allows for decisions to be revisited, "subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" Id. (citing Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir. 1964)).

Kaufman v. Columbia Mem'l Hosp., No. 11-CV-667, 2014 WL 2776662, at *2 (N.D.N.Y. June 19, 2014).

Hence, "[t]he standard for granting a motion for reconsideration [under Rule 54(b)] 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Brooks v. Hogan, No. 14-

CV-477, 2017 WL 1025966, at *2 (N.D.N.Y. Mar. 16, 2017) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

### B. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Selevan v. N.Y. Thruway Auth., 711 F.3d 253, 256 (2d Cir. 2013) (noting summary judgment is appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

### C. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To establish this defense at the summary judgment stage, the officers must show, based on undisputed facts, "either that [their] conduct did not violate 'clearly established rights' of which a reasonable person would

known, or that it was 'objectively reasonable' [for them] to believe that [their] acts did not violate these clearly established rights." Soares v. State of Conn., 8 F.3d 917, 920 (2d Cir. 1993).

The Court must look to both "the clarity of the law establishing the right allegedly violated' as well as 'whether a reasonable person, acting under the circumstances confronting a defendant, would have understood' that his actions were unlawful." Hanrahan v. Doling, 331 F.3d 93, 98 (2d Cir. 2003) (quoting Vega v. Miller, 273 F.3d 460, 466 (2d Cir. 2001)). The "contours" of the right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Golodner v. Berliner, 770 F.3d 196, 205 (2d Cir. 2014) (quoting Anderson v. Creighton, 483 U.S. 635, 639–40 (1987)). Thus, "once [the court] identif[ies] the right at issue," it must "look to whether the Supreme Court or [the Second Circuit] had articulated that right with adequate specificity at the time" of the alleged violation. Id. "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." Reichle v. Howards, 566 U.S. 658, 665 (2012) (citations and quotation marks omitted). This standard "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011).

## IV. DISCUSSION

As an initial matter, the Court notes that Reddie's Motion for Reconsideration was properly brought under Rule 54(b) rather than Rule 60(b)[3] because it requests the Court

---

[3] Rule 60(b) provides that a court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other

6

reconsider the 2019 Memorandum-Decision and Order, which partially denied Defendants' Motion for Summary Judgment. See Kaufman, 2014 WL 2776662, at *2 ("Rule 60 does not apply to the instant motions because the order in question is not a final one as it partially denied the motion for summary judgement. Rather, the instant motions for reconsideration are governed by Rule 54(b) and Local Rule 7.1(g)." (citation omitted)).

The Court now considers in turn Reddie's arguments supporting his Motion for Reconsideration.

**A. Reddie's Failure to Provide Plaintiff with Jumu'ah Services**

Reddie argues that he had no personal involvement in the decision to not provide Plaintiff with Jumu'ah services between June 2015 and January 2016. Reddie's Mem. at 9–10. The Court agrees and reverses its previous finding that Reddie was personally involved in allegedly depriving Plaintiff of his First Amendment rights to attend Jumu'ah services.

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v.

---

misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; . . . or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

Jackson, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." Iqbal, 556 U.S. at 676.

In the 2019 Memorandum-Decision and Order, the Court relied upon disputed evidence suggesting Reddie knew Plaintiff desired to attend Jumu'ah services. For instance, Plaintiff argued that Reddie received an undated letter from Anthony Hill who, like Plaintiff, is a member of the NOI. Compl. ¶ 2. This letter requested that NOI members be allowed to attend Jumu'ah services. 2019 Mem.-Decision and Order at 24 (citing Hill Ltr.).[4] The Deputy Commissioner for Program Services, Jeff McCoy, responded to the Hill Letter on June 19, 2015 stating that Coxsackie C. F. "staff ha[d] informed [his office] that . . . the Coordinating Chaplain [i.e., Reddie] [was] working with the NOI adherents to address religious needs" and that "[a]ll additional concerns should be addressed to the Coordinating Chaplain." Id. at 24–25 (citing McCoy Ltr.). Plaintiff also asserted that he sent Reddie a letter on June 23, 2015 requesting Jumu'ah services. Id. at 23 (citing Compl. ¶ 2; June 23, 2015 Ltr.).

Even if Reddie knew about Hill's and Plaintiff's requests for Jumu'ah services and, as coordinating chaplain of Coxsackie C. F., was "assigned the responsibility for coordination of the total facility religious program and related administrative tasks" and "for meeting the needs of inmates who ascribe to emerging religious faiths," New York State Department of Corrections

---

[4] Reddie argues that the Court should not consider this correspondence since it is inadmissible hearsay. Reddie's Mem. at 6–7. However, "the Court has considered" the letter "not for the truth of the statements [it] contain[s], but as evidence that" Reddie "had notice that there were complaints about the" lack of Jumu'ah services at Coxsackie C. F. See Hill v. Cty. of Montgomery, No. 14-CV-933, 2019 WL 5842822, at *10 (N.D.N.Y. Nov. 7, 2019) (citing United States v. Dupree, 706 F.3d 131, 137 (2d Cir. 2013)). Hence, the Court may properly rely upon this evidence.

8

and Community Supervision ("DOCCS") Directive 4200 § III(A)(2), evidence previously overlooked by the Court suggests Reddie lacked the ability to offer Plaintiff Jumu'ah services.

According to DOCCS Directive 4202 § VI(B)(2)–(3), the prison superintendent must decide "request[s] . . . [t]o observe . . . congregational worship services." Plaintiff has not provided any evidence suggesting Reddie is superintendent of Coxsackie C. F. Nor has Plaintiff submitted any evidence suggesting that Reddie was in a supervisory role such that he could affect the facility superintendent's decision to provide Plaintiff with Jumu'ah services. See Conklin v. Cty. of Suffolk, 859 F. Supp. 2d 415, 443 (E.D.N.Y. 2012) ("[A]n official with no 'hiring, firing, or disciplinary power over any supervisory staff or personnel . . . [or] no direct power to control or direct the customs and policies of the [workplace]' has no personal involvement in the unconstitutional conduct, and a claim under § 1983 cannot be sustained as to that individual." (alterations in original) (quoting Morris v. Eversley, 282 F. Supp. 2d 196, 207 (S.D.N.Y. 2003)). Indeed, the available evidence suggests otherwise. For instance, the McCoy Letter told Plaintiff to appeal his concern regarding the lack of Jumu'ah services to those supervising Reddie should Plaintiff find Reddie had not satisfactorily addressed those concerns.[5] And once Plaintiff grieved the lack of Jumu'ah services in October 2015, Murtuscello instructed Barringer to inquire with the DOCCS Central Office on whether Jumu'ah services could be held at Coxsackie C. F. on Friday mornings, and the Central Office confirmed such services could occur at that time. Dkt. Nos. 33-3 ("Barringer Declaration") ¶¶ 5–6; 33-5 ("Martuscello Declaration") ¶¶ 14–21. Services

---

[5] The McCoy Letter stated, "All additional religious concerns should be addressed to the Coordinating Chaplain, and if you are not satisfied with the outcome, address said concerns with the Deputy Superintendent for Program Services [Barringer]. If you are still not pleased, you may address your concerns to the Superintendent [Martuscello]. You may also use the grievance process if your concerns are not resolved." McCoy Ltr. at 31.

9

began in January 2016. Barringer Decl. ¶ 6; Martuscello Decl. ¶ 22. At most, the evidence suggests Reddie could coordinate Jumu'ah services already provided by the prison. But the authority to coordinate services is not the same as the authority to provide such services in the first instance. Cf. Rose v. Annucci, No. 16-CV-787, 2018 WL 2729259, at *7 (N.D.N.Y. Apr. 19, 2018) (Dismissing § 1983 claim against a defendant for lack of personal involvement because the "Plaintiff's allegations do not suggest that defendant Pellerin, who coordinated food orders for religious meals, had any role in determining which inmates were eligible to attend those meals."), report and recommendation adopted by No. 16-CV-787, 2018 WL 2727874 (N.D.N.Y. June 6, 2018).

Consequently, since a reasonable jury could not find that Reddie was in a position to offer Plaintiff Jumu'ah services, the Court dismisses Plaintiff's free exercise claim against Reddie regarding the denial of those services.[6]

**B. Reddie's Penological Interest in Canceling the October 7, 2015 Savior's Day Services**

As he did on summary judgment, Reddie argues that he postponed the October 7, 2015 Savior's Day services for the legitimate penological justification that there was not enough room to accommodate all of the events scheduled at Coxsackie C. F. on that day. Reddie's Mem. at 10–12; see also Defs.' Summ. J. Mem. at 8–9. Regardless of whether Reddie postponed the Savior's Day services at issue, as he claims, or canceled them, as Plaintiff alleges, Compl. ¶ 4,

---

[6] The Court need not reach Reddie's alternative argument for dismissal, namely that a reasonable officer in Reddie's position would have known that missing Jumu'ah services imposed a substantial burden on Plaintiff's free exercise of his religion. Reddie's Mem. at 4–6; 7–9.

the Court finds that Reddie is not entitled to summary judgment on Plaintiff's free exercise claim regarding those services.

As noted in the 2019 Memorandum-Decision and Order, "the DOCCS religious calendar lists Savior's Day as a 'holy day' of special significance in the NOI faith." 2019 Mem.-Decision and Order at 13 (citing Dkt. No 33-3 ("DOCCS Religious Calendar") at 48). The 2015 Coxsackie C. F. Special Events Calendar also listed services for Savior's Day on October 7, 2015. Id. at 6 (citing Compl. ¶ 4; SOF ¶ 16). Yet "nothing in the record identifies" what the other events scheduled at Coxsackie C. F. on October 7 entailed or "explains why holding them instead of Savior's Day services (which had been on the DOCCS religious calendar for a year)" was justified. Id. at 10.

Reddie's reliance on Orafan v. Goord, 411 F. Supp. 2d 153 (N.D.N.Y. 2006), vacated and remanded sub nom. Orafan v. Rashid, 249 F. App'x 217 (2d Cir. 2007), and O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987), does not warrant a different result. In Orafan, the Second Circuit found there to be "unresolved issues of material fact relevant to the question[] of . . . whether [DOCCS] is able to accommodate plaintiffs' request for a Shiite-led Friday congregation prayer services without jeopardizing legitimate penological objectives." 249 F. App'x at 218 (emphasis added). Therefore, Orafan supports the *opposite* of Reddie's position, namely that is no genuine dispute of material fact concerning whether Reddie had a legitimate penological interest in postponing or canceling the October 7, 2015 Savior's Day services. O'Lone dealt with state inmates who were unable to attend Jumu'ah services held inside of their prison complex because, given their custody classifications, they were forced to work outside of the correctional facility at the time those services were held. 482 U.S. at 342. The Supreme Court held prison officials did

not violate the inmates' constitutional rights in preventing those prisoners from observing Jumu'ah since allowing them to attend services would result in unsafe levels of overcrowding and congestion at the correctional facility. Id. at 350–51. In O'Lone there was no ability to accommodate the plaintiffs' requests to observe Jumu'ah without resulting in unsafe prison conditions. Here, a genuine dispute of material fact exists concerning whether Reddie had the ability to proceed with the October 7, 2015 Savior's Day services as scheduled by canceling other events that conflicted with it. Since a reasonable jury could conclude that Reddie did not proffer a legitimate penological explanation for why he could not hold Savior's Day services on October 7, 2015, Reddie is not entitled to summary judgment on Plaintiff's free exercise claim regarding those services. See Salahuddin v. Goord, 467 F.3d 275–77 (2d Cir. 2006) (reversing grant of summary judgment and denying qualified immunity because prison officials did not meet their "burden . . . to "point[] to [something] in the record suggesting" that the officials denied religious services because of the legitimate interest of preventing threats to inmate safety); Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989) (holding that the district court should have denied summary judgment because prison officials did not "proffer an explanation as to why [the inmate] was denied access to religious services, or articulate a particular penological interest that was served by denying appellant such access").

### C. Plaintiff's RLUIPA Claim Against Reddie

Reddie objects to the Court construing the Complaint to allege a RLUIPA claim against him. Reddie's Mem. at 12–13; see also 2019 Memorandum-Decision and Order at 32–33. The court agrees and dismisses the RLUIPA claim against Reddie.

Plaintiff seeks damages, injunctive, and declaratory relief. Comp. ¶¶ 29–36. RLUIPA, however, "does not authorize claims for monetary damages against state officers in either their official or individual capacities." Holland v. Goord, 758 F.3d 215, 224 (2d Cir. 2014). And while Plaintiff "ordinarily could pursue a claim for injunctive and declaratory relief under RLUIPA against" Reddie, "such claims are now moot based upon [P]laintiff's transfer out of" Coxsackie C. F. on April 28, 2016. See Brandon v. Schroyer, No. 13-CV-939, 2016 WL 1638242, at *9 (N.D.N.Y. Feb. 26, 2016), report and recommendation adopted by No. 13-CV-939, 2016 WL 1639904 (N.D.N.Y. Apr. 25, 2016), rev'd on other grounds sub nom. Brandon v. Kinter, 938 F.3d 21 (2d Cir. 2019); see also Moore Decl., Ex. 17 ("Cantey Deposition") at 23.

Hence, Plaintiff's claim against Reddie under RLUIPA is dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Reddie's Motion for Reconsideration (Dkt. No. 55) is **GRANTED in part.** The following claims against Reddie are **DISMISSED**: (1) free exercise claim for failing to provide Plaintiff Jumu'ah services; and (2) RLUIPA claim; and it is further

**ORDERED**, that Reddie's Motion for Reconsideration is otherwise **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 3, 2020
             Albany, New York

_____
Lawrence E. Kahn
Senior U.S. District Judge